IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NMSURF, INC.,

    Plaintiff,

v.                                                                        No. 1:21-cv-00057-KWR-JHR

STATE OF NEW MEXICO DEPARTMENT
OF TRANSPORTATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff NMSURF, Inc.'s Motion for Preliminary Injunction (**Doc. 5**), filed February 8, 2021. Plaintiff is a New Mexico state and New Mexico Public Regulation Commission ("PRC")[1] regulated competitive local carrier ("CLEC") providing local exchange telecommunication services. Plaintiff requests that the Court issue a preliminary injunction ordering Defendant to approve Plaintiff's two applications for the installation of personal wireless services telecommunications facilities, specifically two, 40-foot utility poles in public rights of way ("ROW") regulated by Defendant. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's motion is well-taken and, therefore, is **GRANTED.**

### BACKGROUND

Plaintiff alleges that, on November 24, 2020, it submitted two permit applications to

---

[1] Plaintiff's President, Albert Catanach, testifies in an Affidavit attached to the Motion that NMSURF's original name was Computer Network Service Professionals, Inc., and that he changed it to NMSURF, Inc. in 2020 by filing the requisite Articles of Amendment with the New Mexico Secretary of State. *See* **Doc. 5-2, ¶ 2; Doc. 5-3, Ex. 3.**

Defendant for the installation of two, 40 foot utility poles within ROWs subject to Defendant's regulation. Plaintiff alleges that the purpose of these installations is to mount antennas to provide broadband wireless services in two locations in Albuquerque where there is "little or no fixed broadband service now available." **Doc. 5 at 3.**

There is no dispute that Defendant is a department of the State of New Mexico and an "instrumentality" of the State under § 332(c)(7)(B). Plaintiff alleges that it submitted its two permit applications in accordance with New Mexico Administrative Code ("NMAC") 17.4.2(G), which details the appropriate process for obtaining a "New Mexico public highway utility accommodation permit."[2] Plaintiff alleges that it is a utility within the meaning of NMAC 17.4.2 as a company that provides microwave, telephone and fiberoptic services.[3] *Id*. **at 4.** Plaintiff

---

[2] NMAC 17.4.2 is entitled "Requirements for Occupancy of State Highway System Right-of-Way by Utility Facilities". Subsection G is entitled "New Mexico public highway utility accommodation permit." NMAC 17.4.2 (G)(1-2) provide:
> **(1) General requirements**: A utility owner who desires to install segments of their utility systems, or needs to relocate an existing facility already installed within the rights-of-way of public highways under the jurisdiction of the NMSHTD, must apply for a New Mexico Public Highway Utility Accommodation Permit. No utility construction shall commence on public highways right-of-way until the utility owner has obtained the approved permits, approval of their insurance, with coverages and face amounts shown in Paragraph 12.11 [now Subsection K of 17.4.2.12 NMAC], and added the NMSHTD as an additional insured. After receiving approval, the utility owner shall notify the Department in writing, five days in advance of the date their installation or relocation construction will commence.
> **(2)** The utility owner seeking a utility permit must provide as-built plans, within thirty (30) days of completion of the installation pertaining to the location of the facility installed. The location must be tied by a survey, performed and certified by a registered New Mexico Land Surveyor, to the Department's monuments and referenced to Department's mileposts and/or to the highway construction project stationing. The Utility shall provide a map to the Department detailing location and elevation of each break point along the facility. Where utility owners fail to establish documentation and provide survey maps to the Department, and Department maintenance crews damage utilities, the utility shall be responsible for all costs associated with repair, but only if Department requested a utility locate prior to beginning maintenance activities. *See* NMAC 17.4.2

[3] 17.4.2.7 (DK) defines a utility within the meaning of the statue:
> "-- *All publicly, privately and cooperatively owned utilities*, without distinction, *for the rendition of water, electric power, sanitary sewer, storm sewer, steam, fuel gas, telephone or telegraph service through a system of pipes or wires devoted to public utility service. The systems can include* natural gas; sanitary sewage collection systems; electricity; *communication systems, including telephone, telegraph, TV cable, microwave, fiberoptics and others*. The term "utility" does not apply to utility systems devoted solely to private use, or when the product of the private utility system is not for sale or for use by the general public as a whole." (emphasis added).

alleges that both applications were submitted using Defendant's form A-63, rev. 11/12, entitled "Application for Permit to Install Utility Facilities Within Public Right of Way". Plaintiff proffers the Catanach Affidavit, testifying that this is the same form through which it had successfully submitted previous permit applications for similar projects. **Doc. 5-2, Ex. 2, ¶ 8**.

On December 23, 2020, Defendant issued a denial of both applications by letter, and emailed Plaintiff the following day. The Denial Letter, attached to Plaintiff's Motion as Exhibit 5, provides in the relevant portions:

> NMDOT controlled right-of-way is by definition exempted from the New Mexico Legislatures 2018 Wireless Consumer Advanced Infrastructure Act, Section 2 (O). The NMDOT is required to follow Federal Highway Administration rules including 23 CFR 710.403(e) and charge fair market value for the private use of NMDOT controlled right-of-way (ROW), as the NMDOT has done for the last twenty years…
>
> NMSURF Internet is not eligible for the free use of public right-of-way because NMSURF is not a public utility rendering essential services subject to consumer-rate regulation by the Public Regulatory Commission. See NMSA 1978, Section 67-8-15.
>
> The NMDOT has entered into rulemaking to promulgate a new telecom-broadband section to NMAC 17.4.2., Requirements for Occupancy of State Highway System Right-of-Way by Utility Facilities. Until the new telecom-broadband rule is published and adopted, the NMDOT has drafted an interim telecom-broadband permit and related application process, for the NMDOT to process private ROW use applications during the rulemaking period.

**Doc. 5-5, Ex. 5.**

The Denial Letter continues, offering Plaintiff an alternative application form as a "non-PRC" regulated entity, should it be "willing to accept the standardized interim terms and rates, which include an annual fee for ROW use…" *Id*. Finally, the Letter concludes, noting, "Additionally, ROW use requests which are within controlled access boundaries of controlled access highways, will be summarily denied. Please review NMAC 18.31.6., State Highway Access Management Requirements." *Id*. The Denial Letter does not provide any further basis for the denials and

Plaintiff alleges that "Defendant did not object to Plaintiff's construction plans, or any other part of the Applications. The denials were based solely on a misapprehension of Plaintiff's status as a utility." **Doc. 5 at 7**. Plaintiff states that it ultimately elected not to apply under the alternative form proffered to it by Defendant because it "is a public utility" and, despite Defendant's alleged implication to the contrary, is also a PRC-regulated entity[4]. *Id*. Plaintiff alleges that this sort of "blanket refusal," when it is eligible for approval is a violation of § 332 (c)(7) in prohibiting Plaintiff from providing personal wireless services. *Id*.

## LEGAL STANDARD

The Court notes that the Tenth Circuit has identified three types of particularly disfavored preliminary injunctions, concluding that a movant must make a heightened showing to demonstrate entitlement to relief with respect to such injunctions. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004). These three types are: a preliminary injunction that alters the status quo, a mandatory preliminary injunction, or a preliminary injunction that affords the movant all the relief that it could recover at the conclusion of a full trial on the merits. *See id*. A movant seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms. *See id*. at 976. Neither party addressed in their briefs whether or not Plaintiff seeks a disfavored preliminary injunction. The Court therefore will apply normal preliminary injunction standards.

To obtain a preliminary injunction, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against*

---

[4] Plaintiff alleges that its status as a PRC-regulated entity is not relevant to the law, but notes that Defendant seemingly implied in its Denial Letter that this was a relevant consideration.

4

*Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *See United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

## DISCUSSION

### I. Preliminary Injunction

#### A. Likelihood of Success

Under this factor, Plaintiff need only show a substantial likelihood of success on the merits and "need not show a certainty of winning." *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin.*, 843 F.3d 886, 901 (10th Cir. 2016), *cited in DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1273 (10th Cir. 2018). Generally, Plaintiff bears the burden to show a substantial likelihood of success on the merits, but "the burdens at the preliminary injunction stage track the burdens at trial." *Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1147 (10th Cir. 2020).

##### 1. Plaintiff has shown it is likely to prevail

There is no dispute that the matter of Plaintiff's permit applications is subject to Section 332(c) of the Telecommunications Act ("TCA"). "That portion of the [TCA] provides that while

5

local governments may regulate 'the placement, construction, and modification of personal wireless service facilities,' such regulation cannot 'prohibit or have the effect of prohibiting the provision of personal wireless services.' " *AT & T Mobility Services, LLC v. Vill. of Corrales*, 127 F. Supp. 3d 1169, 1172–73 (D.N.M. 2015), *aff'd, AT & T Mobility Services, LLC v. Vill. of Corrales*, 642 Fed. Appx. 886 (10th Cir. 2016); 47 U.S.C. § 332(c)(7).

In the relevant part § 332 (c) ("Regulatory treatment of mobile services") provides required steps for issuing a permit denial and the appropriate response to a denial:

> **(iii)** Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities *shall be in writing and supported by substantial evidence contained in a written record.*
>
> **(v)** Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. *The court shall hear and decide such action on an expedited basis*. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332 (emphasis added).

Plaintiff argues that it is likely to succeed on the merits because its applications fall squarely within the ambit of § 332 as described by the Federal Communications Commission ("FCC") Order 18-133[5] and because Defendant's denial fails to provide "substantial evidence

---

[5] In the relevant portions, FCC Order 18-133 provides:
> In Sections 253(a) and 332(c)(7)(B) of the Act, Congress determined that state or local requirements that prohibit or have the effect of prohibiting the provision of service are unlawful and thus preempted… We clarify that an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service. This test is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities… Thus, an effective prohibition includes materially inhibiting additional services or improving existing services.

*See* FCC Order 18-133, ¶¶ 34-37. https://docs.fcc.gov/public/attachments/FCC-18-133A1.pdf.

The FCC Order defines a "covered service" as "…a telecommunications service or a personal wireless service

contained in a written record" as required by the statute. **Doc. 5 at 10.** Specifically, Plaintiff alleges that: (1) the Denial Letter provides no evidence of Plaintiff's supposed non-utility or non-PRC regulated status, (2) Defendant impermissibly changed its interpretation of the applicability of NMAC 17.4.2 and NMAC 17.4.2.12(G) without formal administrative action, since it presumably knew of Plaintiff's prior, eligible utility status in the past, (3) Plaintiff is a utility as defined in NMAC 17.4.2.7 (DK), and, (4) nothing in NMAC 17.4.2 on utility rights of way requires that the applying entity be PRC-regulated.[6]

Plaintiff notes that nothing in § 332 (c)(7) distinguishes between a company's status as a utility or non-utility, nor does the statute discuss whether an entity must be subject to a state or local regulatory body, like the PRC. *Id.* **at 12.** Rather, § 332 (c)(7) specifies the type of services that falls within its domain. Thus, Plaintiff argues, "there is no such thing a wrong entity." *Id.* Defendant does not offer any substantive response to the Motion. Rather, Defendant's Response in Opposition is formatted similarly to an Answer to a Complaint and provides repeated blanket assertions stating either that "The allegations of paragraph [X] speak for themselves, not requiring any response. To the extent such allegations, mischaracterize or misstate matters, such allegations are denied," or that it lacks sufficient knowledge to admit or deny a particular allegation. *See generally* **Doc. 25.** Inasmuch as Defendant offers any legal or factual basis for its opposition, it asserts that (1) it is authorized by 47 U.S.C. § 253 to manage ROW's and charge a reasonable fee from telecommunications providers, (2) one of Plaintiff's requested locations for installation of a utility tower "ise [sic] unsafe, and therefore not the least intrusive manner to provide service", and

---

for purposes of Section 253 and Section 332(c)(7), respectively." *Id.*
[6] Plaintiff asserts that despite the lack of a precondition in NMAC 17.4.2 that an entity be PRC-regulated, "Plaintiff is a CLEC. CLECs are a part of federal law, and are referenced by New Mexico statute at NMSA 63-9A-5(D), a part of a provision entitled 'Regulation by Commission', referring to the PRC. In the NMAC, all of Part 19, within Title 17 (Public Utilities and Utility Services), Chapter 11 (Telecommunications), addresses PRC regulation of CLECs. There is no question that Plaintiff is subject to the PRC." **Doc. 5 at 11.**

(3) the same proposed siting of Plaintiff's utility tower "…is barred or limited by Access Control laws, rules or regulations (see NMAC 18.31.6).". *Id*. **at 4, ¶¶ 9-11.**[7]

2. Defendant's Arguments are Without Merit

Defendant's sole references to the law in its Response in Opposition are 47 U.S.C. § 253 and NMAC 18.31.6. Defendant does not provide any clear explanation as to the relevance of these citations. The Court is in agreement with Plaintiff, however, that although § 253 permits Defendant to seek "fair and reasonable compensation for telecommunications providers," Plaintiff had not failed to pay any fee at the time of the denial of its applications, nor would Defendant's right to charge a fee warrant denial of properly submitted applications.[8] **Doc. 26 at 3.** Moreover, Defendant does not explain its reasoning, and its Denial Letter provides no indication that any fee issue was the basis for the rejections. Additionally, Plaintiff correctly notes that there is no language authorizing fees in NMAC 17.4.2 or its authorizing statute, NMSA 1978 § 67-8-1, *et seq*.[9]

Finally, the Court is unable to discern the applicability of NMAC 18.31.6 to the instant matter. Defendant does not explain its inclusion, beyond a conclusory statement that "Plaintiff's

---

[7] Defendant also asserts that there is no basis in law or fact for Plaintiff's request for attorneys' fees in the matter. **Doc. 25 at 5, ¶ 12.**

[8] Plaintiff notes that "The Denial Letter references 23 CFR 710.403(e) as requiring a charge of fair market value for use of federal rights of way operated by a state entity, but 23 CFR 710.403(e) applies that charge 'except as provided in paragraphs (e)(1) through (6) of this section', and the exception at 23 CFR 710.403(e)(2) is for use as a public utility." **Doc. 5 at 13, fn. 2.** The Court notes that Defendant fails to respond to this argument.

[9] For example, NMSA 1978 § 67-8-13 provides in its entirety:
> "It is unlawful for any person, company or corporation to place or cause to be placed any conduit, wires or cables across, upon, attached to or upon the highway right of way parallel to and within twenty-five feet of any state highway bridge or structure except pursuant to a permit obtained from the state transportation commission and upon compliance with reasonable conditions and requirements specified in such permit. The state transportation commission is authorized and empowered to prepare application and permit forms for such purposes."

NMSA 1978 § 67-8-13

The Court notes that in asserting that Plaintiff is not an eligible public utility, Defendant's Denial Letter refers generally to NMSA 1978 § 67-8-15. A plain reading of this section, entitled "Declaration of Public Policy" does not appear to support Defendant's assertion and, rather, promotes the importance of installation of utility lines along public ways for the public benefit

8

proposed siting near Richards Avenue is barred or limited by Access Control laws, rules or regulations. (see NMAC 18.31.6). " **Doc. 25 at 4, ¶ 11.** The objective of NMAC 18.31.6, entitled "State Highway Access Management Requirements" does not appear to have any relevance:

**18.31.6.6 OBJECTIVE:**

> **A.** By 18.31.6 NMAC, the department establishes access management requirements which will protect the functional integrity of the state highway system and the public and private investment in that system. Rule 18.31.6 NMAC, and its associated *state access management manual* which is attached to and filed concurrently with this rule, provides procedures and standards to preserve and protect the public health, safety and welfare, to maintain smooth traffic flow, and to protect the functional level of state highways while considering state, regional, local, and private transportation needs and interests. The access management requirements also consider other department regulations, policies and procedures related to highway rights-of-way such as drainage, archeology, hazardous materials and other environmental aspects

NMAC 18.31.6 (emphasis in original).

As noted by Plaintiff, NMAC 18.31.6 mostly addresses vehicular access issues relating to owners of land abutting or adjacent to a road or highway, which has no apparent bearing on the instant matter. **Doc. 26 at 4.** Accordingly, the Court finds Defendant's formulaic and cursory arguments absent merit.

        3.      <u>Defendant's Denial of the Permits Violates the Statute</u>

Plaintiff argues that Defendant's denial of the two permit applications violate § 332 (c)(7)'s requirement that any denial "shall be in writing and supported by substantial evidence contained in a written record." § 332 (c)(7)(B)(iii). **Doc. 5 at 11-12.** Plaintiff alleges, and Defendant does not contest, that the Denial Letter contains no evidence in support of the assertion that Plaintiff is not eligible for the requested permits because it is "not a public utility rendering essential services subject to consumer-rate regulation by the Public Regulatory Commission." *Id*. **at 10;** *Id*.**, Ex. 5.**

In *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County, Kansas City, Kan.* (546 F.3d

9

1299 (10th Cir. 2008)), a case with a similar factual background to this matter, the Tenth Circuit discussed the court's role in determining whether substantial evidence for denial of a permit application exists under § 332:

> Judicial review under the substantial evidence standard is quite narrow. While deferential, however, it is not a rubber stamp. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker]. Substantial evidence requires more than a scintilla but less than a preponderance…. Substantial evidence review does not create a substantive federal limitation on local land use regulatory power. As the Ninth Circuit has stated, the substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*.

*Id*. at 1306-07. (internal citation and quotations omitted) (emphasis in original). The Tenth Circuit found that the three criterion cited in denying the plaintiff's permit application was not supported by substantial evidence on the record. *Id*. at 1308. ("By inventing a criterion for which the applicable local ordinances did not provide, the Board failed to act on the basis of substantial evidence. In order [to] be supported by substantial evidence, the proffered reasons must comport with the objective criteria in existence (i.e. zoning regulations, permit application policies, etc.). Governing bodies cannot simply arbitrarily invent new criteria in order to reject an application.") (internal quotations omitted).

Here, Defendant's Denial Letter falls well short of providing any evidence, let alone substantial evidence, in support of its denial of Plaintiff's permit applications. Defendant provides no criteria for its denial beyond conclusory statements relating to Plaintiff's supposed status as a non-utility. Defendant has done nothing to rebut the evidence proffered by Plaintiff that it is in fact a proper utility within the statutory meaning and that it appropriately adhered to application procedures. The Denial Letter did not proffer any objections to Plaintiff's plans or construction designs. In fact, it does not offer any concerns beyond the supposed status of Plaintiff as a non-

utility. *See e.g., U.S. Cellular Corp. v. City of Wichita Falls, Tex.*, 364 F.3d 250, 256 (5th Cir. 2004) (noting that " 'generalized concerns' about aesthetics or property values do not constitute substantial evidence."); *See also AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach*, 155 F.3d 423, 430–31 (4th Cir. 1998) (holding that the denial of the appellee's application was supported by substantial evidence by the record's inclusion of the "appellees' application, the Planning Department's report, transcripts of hearings before the Planning Commission and the City Council, numerous petitions opposing the application, a petition supporting the application, and letters to members of the Council both for and against.").

The Denial Letter states that Defendant has "entered into rulemaking to promulgate a new telecom-broadband section to NMAC 17.4.2..." but Defendant provides no indication that any rules have actually been issued or what the substance of the purported new rules would be. Thus, the Court finds that Petitioner has shown a substantial likelihood of prevailing on the merits and concludes that Defendant's denial of Plaintiff's permit applications violates the provisions of § 332(c)(7)(B)(iii) in its failure to provide substantial evidence in its denials.

    **B.**    **Irreparable Injury**

To satisfy the irreparable injury requirement, Plaintiff must show "a significant risk that [it] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (citation omitted). The standard requires that the injury be "both certain and great," not "merely serious or substantial." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008). Furthermore, Plaintiff must demonstrate that the harm "is likely to occur before the district court rules on the merits." *RoDa Drilling Co.*, 552 F.3d at 1210 (citation omitted).

Plaintiff argues that the injury is ongoing because the it has a statutory right to install utility

11

poles for wireless services without interference by Defendant, absent proper reasoning, and because money damages are unavailable to remedy Plaintiff's injury, which Plaintiff asserts is impermissible for a § 332(c)(7) claim. **Doc. 5 at 13-14**; *See Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1353–54 (10th Cir. 1989) ("A permanent injunction is appropriate when the remedy at law is inadequate to compensate the injury sustained.").

Defendant again offers nothing by way of response beyond a blanket assertion in its section of the brief titled "Affirmative Defenses" that "Plaintiff has not made a clear showing of one or more necessary factors of likelihood or success on the merits, irreparable injury, balance of equities and/or public interest, thereby barring its claims." **Doc. 25 at 3, ¶ 5.**

The Court finds that Plaintiff has sufficiently alleged a significant risk of harm likely to occur before the district court rules on the merits. The key factor is whether the imminent injury will not be able to be compensated after the fact by monetary damages. *Compare RoDa Drilling Co.*, 552 F.3d at 1210 (finding that deprivation of control of real property constituted irreparable harm) *with Morton v. Beyer*, 822 F.2d 364, 371 (3d Cir. 1987) (finding that a loss of income was purely economic in nature and thus compensable in monetary damages). In this case, the denial of Plaintiff's application for two permits, which has already occurred, cannot be compensated after the fact by monetary damages. *See City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 122–23, 125 S. Ct. 1453, 1459–60, 161 L. Ed. 2d 316 (2005) ("Judicial review of zoning decisions under § 332(c)(7)(B)(v) must be sought within 30 days after the governmental entity has taken final action, and, once the action is filed, the court must hear and decide it on an expedited basis. § 332(c)(7)(B)(v). The remedies available, moreover, perhaps do not include compensatory damages (the lower courts are seemingly in disagreement on this point), and certainly do not

include attorney's fees and costs.") (internal quotations omitted).

C. **Balance of Equities**

The Court must next consider whether Plaintiff's "threatened injury outweighs the injury the opposing party will suffer under the injunction…" or whether "the balance of equities tips in [Plaintiff's] favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 889 (10th Cir. 2013) (internal citations and quotation marks omitted). The third and fourth preliminary injunction factors "merge" when the government is the party opposing the injunction. *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).

As explained in the preceding sections of this opinion, Plaintiff is likely to be harmed by the denial of its permit applications by Defendant without substantial evidence pursuant to § 332(c)(7)(B)(iii). As set forth in the Catanach Affidavit, Defendant's denials are "prohibiting NMSURF from providing personal wireless services to the public through placing or constructing the utility poles for fixed wireless signals from antennas." **Doc. 5-2, Ex. 2 at ¶ 9.** In contrast, Defendant has not evidenced how it would suffer any high degree of harm and does not offer argument that the balance of equities weighs in favor of denial of the preliminary injunction, other than the same blanket statements noted previously. Thus, Defendant having once again failed to provide any basis in support of its position, the Court finds that the balance of equities weighs in favor of issuance of the preliminary injunction.

Finally, the Court should also consider that the purpose of § 332 and whether Defendant has run afoul of its provisions. *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County, Kansas City, Kan.*, 546 F.3d at 1306 ("Congress adopted the TCA in order to promote competition and higher quality in telecommunications services and to encourage the rapid deployment of new telecommunications technologies…The TCA furthered these goals by reducing the impediments

that local governments could impose to defeat or delay the installation of wireless communications facilities such as cell phone towers, and by protecting against 'irrational or substanceless decisions by local authorities.'") (internal citation omitted). Having conducted the requisite analysis, the Court concludes that Defendant's conduct runs contrary to the purpose of the statute and conflicts with its requirements.

### D. Public Interest

Plaintiff argues that the development of telecommunications statutes represents Congress' intent to expand provision of wireless services to the community "by freeing private companies to increase service." **Doc. 5 at 14.** While Plaintiff does not cite to anything in particular in support of this general policy, Defendant does not address the issue whatsoever. The Court feels it can reasonably concur with Plaintiff's position and the premise that access to wireless services is beneficial to the community at large, particularly in an areas with "little or "little or no fixed broadband service now available." **Doc. 5-2, Ex. 2, ¶ 4.**[10] Certainly, the Court more readily finds that issuance of the injunction would not be adverse to the public interest, nor is it unreasonable to expect Defendant to adhere to statutory provisions regarding the appropriate steps for denying permit applications. Accordingly, Plaintiff has adequately demonstrated that Defendant's denial of its two permit applications prohibited or effectively prohibited it from providing wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

## II. Bond.

Fed. R. Civ. P. 65(c) requires that prior to the issuance of a preliminary injunction, the Plaintiff post a bond in an amount the Court considers proper. Fed. R. Civ. P. 65(c) provides:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have

---

[10] Defendant does not dispute that the two proposed areas have limited or no services currently available.

been wrongfully enjoined or restrained.

The Court has "wide discretion… in determining whether to require security." *See RoDa Drilling Co. v. Siegal*, 552 F.3d at 1215 (affirming district court ruling, where there appeared to be no harm). A bond may be "unnecessary to secure a preliminary injunction if there is an absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir. 1987); *See also Nokia Corp. v. InterDigital, Inc.,* 645 F.3d 553, 557 (2d Cir. 2011) (noting that the purpose of the bond requirement to "to protect his adversary from loss in the event that future proceedings prove the injunction issued wrongfully") (quotations omitted). Here, Defendant has not demonstrated how it would be harmed, thus, the Court finds that a bond is unnecessary.

## CONCLUSION

The Court finds that Plaintiff has established each of the factors necessary to obtain a preliminary injunction. The Court finds that Plaintiff is entitled to a preliminary injunction in which Defendant is ordered to approve Plaintiff's two applications for the installation of telecommunications utility poles. The Court declines to grant Plaintiff's request for attorneys' fees as it has not demonstrated any legal basis for such relief.

**IT IS THEREFORE ORDERED THAT:**

Defendant New Mexico Department of Transportation and its employees shall issue approval of Plaintiff's two, November 24, 2020 permit applications for the installation of telecommunications utility poles.

**IT IS SO ORDERED.**


**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**